UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| LINKSMART WIRELESS TECHNOLOGY, LLC, | Case No. 2:18-cv-00862-MMD-NJK |
| Plaintiff, | ORDER |
| v. | |
| CAESARS ENTERTAINMENT CORPORATION, *et al.*, | |
| Defendants. | |

## I.    SUMMARY

Plaintiff Linksmart Wireless Technology, LLC alleges that Defendants Caesars Entertainment Corporation, Golden Nugget, Inc., Landry's Inc., Las Vegas Sands Corp., MGM Resorts International, and Wynn Las Vegas LLC infringe U.S. Reissued Patent No. RE46,459 (the "'459 Patent") in this consolidated patent case[1] because they have systems at their hotels that ask guests for login information the first time those guests connect to the WiFi. (ECF No. 1.) Before the Court are Defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing the '459 Patent is not directed to patentable subject matter under 35 U.S.C. § 101, and is thus invalid as a matter of law.[2] (ECF Nos. 77, 78, 79.) Because the Court is unpersuaded by Defendants' argument that the '459 Patent is directed to an abstract idea, but instead finds the patent claims a solution to a

---

[1]The Court consolidated Case Nos. 2:18-cv-00864-MMD-NJK, 2:18-cv-00865-MMD-NJK, 2:18-cv-00867-MMD-NJK, and 2:18-cv-00868-MMD-NJK under this case number. (ECF No. 45.)

[2]Plaintiff filed a consolidated response to all three motions. (ECF No. 91.) Defendants filed replies. (ECF Nos. 92, 93, 94.) As the motions to dismiss and corresponding replies are substantively the same, the Court refers throughout this order to the low-numbered motion to dismiss and reply. (ECF Nos. 77, 92.)

problem specifically arising in the realm of computer networks—and as further explained below—the Court will deny the motions to dismiss.

## II.     BACKGROUND

The following facts are adapted from the Complaint. (ECF No. 1.) The '459 Patent is entitled "User specific automatic data redirection system." (*Id*. at 2.) The '459 Patent claims priority to U.S. Provisional Pat. App. No. 60/084,014 (the "'014 Application"), filed on May 4, 1998 (ECF No. 1-2 at 2), which primarily consists of a report authored by the '459 Patent's co-inventors (ECF No. 1 at 4). The '459 Patent centers on an allegedly novel and innovative system featuring a "redirection server" that mediates an end user's internet access based on rules regarding parameters such as time, or the location from which an end user is accessing the internet. (*Id*. at 4-6.) The redirection server sits between the end user and the wider internet. (*Id*. at 5.) The redirection server can therefore filter the end user's requests based on rules programmed in the redirection server. (*Id*. at 5-6.) "By way of example, rule sets could be programmed such that a user would need to access a location, e.g., a page with advertising, before being able to freely surf the Web." (*Id*. at 6.)

The innovation embodied in the '459 Patent is visually represented in the '459 Patent through a comparison between two figures:



(ECF No. 1-1 at 7 (emphasis added).) The red circle highlights the redirection server.

The Complaint explains: "Once the user is connected to the ISP in this case, the user's requests to the Internet first go to the redirection server." (ECF No. 1 at 5.) As mentioned, that means the redirection server could, for example, force the user to view an advertisement before accessing the broader internet. Moreover, the '459 Patent specifies that the rule set used by the redirection server can be automatically modified. (*Id.* at 5, 6.) "As another example of the redirection server automatically modifying the rule set if a user has obtained access to the Internet through paid access for a limited time, the user's Internet access could be disabled once that time has been exceeded." (*Id.* at 6.)

The Complaint goes on to explain this system solved problems associated with preexisting redirection methods and systems. Specifically, at the time of the invention, while redirection could be performed by HTML code on a web page, that redirection could only occur once the user had already gained access to the internet, and not, as in the '459 Patent, before the user can even access the internet. (*Id.*) Or redirection could be accomplished through a proxy server programmed with a list of blocked or allowed addresses—such that a user could only access certain sites—but those lists were governed by static rules that needed to be reprogrammed by an external server to change the sites the user could access. (*Id.* at 6-7.)

Plaintiff alleges that Defendants infringe the '459 Patent by relying on technology covered by the '459 Patent to provide internet access to their hotel and resort guests. The Complaint contains a specific example alleging that the system used in Defendant Caesars Entertainment Corporation's Las Vegas hotels infringes the '459 Patent's exemplary claim 91. (*Id.* at 8-10.) Plaintiff alleges that, when a Caesars' hotel guest first attempts to connect to the internet from her hotel room, she is presented with a popup window asking her to provided login credentials regardless of the web site URL she initially enters into her browser bar. (*Id.* at 8-9.) But when that user enters her login information, Caesars' server modifies its rule set to allow her to access the internet for a period of time—such as a day, if she has only paid for a day's worth of internet access. (*Id.* at 9-

3

10.) Plaintiff thus alleges that, in this example, Defendant Caesars indirectly infringes the '459 patent under 35 U.S.C. § 271(b) by actively inducing infringement by its hotel guests who follow Caesars' instructions to access the WiFi network from her hotel room. (*Id.* at 10.)

The parties focus their arguments on claim 91 of the the '459 patent, which reads:

A system comprising:

a redirection server programmed with a user's rule set correlated to a temporarily assigned network address;

wherein the rule set contains at least one of a plurality of functions used to control data passing between the user and a public network;

wherein the redirection server is configured to automatically modify at least a portion of the rule set while the rule set is correlated to the temporarily assigned network address;

wherein the redirection server is configured to automatically modify at least a portion of the rule set as a function of some combination of time, data transmitted to or from the user, or location the user accesses; and

wherein the redirection server is configured to modify at least a portion of the rule set as a function of time while the rule set is correlated to the temporarily assigned network address.

(ECF No. 1-1 at 15; *see also* ECF Nos. 77, 91 (focusing on this claim).)

III. **LEGAL STANDARDS**

A. **Dismissal Under Rule 12(b)(6)**

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555.) "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to

4

survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *See id.* at 678-79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *See id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *See id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *See id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). That is insufficient. A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original)). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *See Twombly*, 550 U.S. at 570.

**B.    Patentable Subject Matter and the *Alice* Standard**

Under Section 101 of the Patent Act, an inventor may obtain a patent on "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. Courts, however, "have long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)). The concern behind these excepted categories is "one of pre-emption"—if an inventor could obtain patent protection over these "building blocks of

5

human ingenuity," then the patent scheme would work to undermine, not promote, future innovation. *Id.* at 2354. But courts are careful to balance concerns over preemption with the fact that "all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012). Thus, where an invention moves beyond an abstract idea by applying it "to a new and useful end," the invention will meet the Section 101 standard. *Alice*, 134 S. Ct. at 2354 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

In light of these competing concerns, the Supreme Court has developed a two-part test to assess whether a patent covers an abstract idea. First, courts must determine whether a patent's claims are directed to a "patent-ineligible concept," such as an abstract idea. *Id.* at 2355. Abstract ideas may be "preexisting, fundamental truth[s]" such as mathematical equations, and also encompass "method[s] of organizing human activity" or "longstanding commercial practice[s]" like intermediated settlement or risk hedging. *Id.* at 2356.

Second, if the court "determine[s] that the patent is drawn to an abstract idea or otherwise ineligible subject matter," then the court examines "whether the remaining elements, either in isolation or combination with the non-patent-ineligible elements, are sufficient to 'transform the nature of the claim into a patent-eligible application.'" *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366-67 (Fed. Cir. 2015) (quoting *Alice*, 134 S. Ct. at 2358).

Whether a patent is eligible under § 101 is a question of law that may be determined at the dismissal stage. *See Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340-41 (Fed. Cir. 2013) (reviewing a § 101 determination *de novo*, but noting that the legal issue on review "may contain underlying factual issues"); *see also Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348-49 (Fed. Cir. 2015) (affirming a district court's granting of a motion to dismiss on § 101 grounds).

///

## IV.    DISCUSSION

The Court is unpersuaded it should move beyond step one of the *Alice* inquiry. Defendants argue in pertinent part—through analysis of representative claim 91 of the '459 Patent—that the '459 Patent is "directed to the abstract idea of controlling the flow of data based on a changing set of rules." (ECF No. 77 at 7.) Plaintiff counters that the '459 Patent is not directed to an abstract idea, but is instead directed to an improvement in computer networking technology. (ECF No. 91 at 6.) The Court agrees with Plaintiff.[3]

The issue with Defendants' formulation of the abstract idea to which the '459 Patent is allegedly directed is that it reads out the redirection server. But the claims, specification, and even the figures of the '459 Patent make clear that the redirection server is an integral piece of the invention embodied in the the '459 Patent. (ECF No. 1-1 at 2 (describing in the abstract that the redirection server is the thing that redirects data), 7 (indicating in the figures that the redirection server is the difference over the prior art systems) 9-10 (stating the redirection server is logically located between the user's computer and the network, and explaining how the redirection server works with other components of the system), 11 ("The redirection server 208 programs the rule set and IP address so as to filter and redirect the user's packets according to the rule set."), 15-18 (containing myriad references to a redirection server).) Thus, a formulation of the subject matter of the the '459 Patent that ignores the redirection server—along with its allegedly novel placement between the user and the broader internet—is incorrect. (*Id.* at 9-10.) Indeed, the Court is persuaded by Plaintiff's counterargument that "controlling the flow of data based on a changing set of rules" could describe any software, but does not speak to the redirection server and its operation as described in the claims of the '459 Patent. (ECF No. 91 at 6-7.)

Moreover, the Court is persuaded by Plaintiff's argument that the "claims of the '459 patent are directed to specific ways of improving computer networking technology to

_____

[3]Plaintiff also disputes whether claim 91 is representative of the claims of the '459 Patent, but the Court need not—and does not—address that argument because the Court agrees with Plaintiff that the claims of the '459 Patent are not directed to an abstract idea. (ECF No. 91 at 28-29.)

control user access to an external public network, such as the Internet, by using a new 'redirection server' that dynamically redirects a user's request to access the public network using specific structure, content, and functionality." (ECF No. 91 at 7.) *See also DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) (describing as patent eligible claims "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks."). Like the claims at issue in *DDR Holdings*, the Court finds that the claims of the the '459 Patent are patent eligible because they are directed to solving a problem without an offline analogue specific to the functioning of a computer network. *See id.* at 1257-1259. More specifically, the '459 Patent's claims are directed to solving the problem[4] of how to redirect end users to take actions the network owner wants or requires them to take before they are able to access the broader internet, and continue to control the end user's access to the internet, using rules that can be changed automatically—like making a user input a username and password before they can access the internet, and then kicking that same user off when the internet access time they paid for has expired. (ECF Nos. 1 at 6-7 (explaining the problem the '459 Patent seeks to solve and its advantages over prior art systems), 91 at 8, 12-14, 23 (making the argument).) That problem is specific to computer networks.

It also does not appear to the Court that the claims of the '459 Patent represent merely a mathematical algorithm executed on a generic computer, nor are they merely "fundamental economic and conventional business practices." *DDR Holdings*, 773 F.3d at 1256 (noting these types of claims are not eligible for patent protection). Similarly, the Court does not find the claims of the '459 Patent recite merely "the collection, transfer, and publishing of data[.]" *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1315 (Fed. Cir. 2019) (stating the Federal Circuit has consistently held these types of claims are directed to an

---

[4]The problem is more a problem for owners of networks allowing connection to the broader internet than it is a problem for end users. End users presumably want to access the internet without any forced redirection. But owners of places like hotels would presumably like to control who accesses the internet from their networks, and force redirection of anyone trying to connect to ensure they have paid the appropriate fee, or are actually a guest of the hotel who owns the network.

abstract idea). Claim 91 of the the '459 Patent is not directed to data collection, but instead describes a redirection server that modifies rules over time to control data "passing between the user and a public network[.]" (ECF No. 1-1 at 15.) The claims of the '459 Patent therefore do not cleanly fall into the categories of claims the Federal Circuit has found directed to an abstract idea.

Another way of demonstrating patent claims are directed to an abstract idea is by showing they reflect nothing more than a mental process easily done with pen and paper, but instead done on a computer. *See, e.g.*, *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) ("we have treated analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category."); *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 842 (E.D. Tex. 2014) ("The fact that an invention consists of simple calculations that can readily be performed by humans is a factor that has frequently been held to be indicative of unpatentability."). But that schematic for determining patent eligibility does not seem to apply here either. The claims of the '459 Patent cover the configuration and behavior of a system including a redirection server, not merely simple mental processes. *See, e.g.*, *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1304 (Fed. Cir. 2019) ("we tend to agree with SRI that the human mind is not equipped to detect suspicious activity by using network monitors and analyzing network packets as recited by the claims.") (currently on appeal).

Overall, the Court finds the claims of the '459 Patent are "are more like the patent-eligible claims in *DDR Holdings*" that "were directed to more than an abstract idea that merely required a 'computer network operating in its normal, expected manner.'" *Id.* Indeed, the purported invention embodied in the '459 Patent is a new-and-improved way to configure a computer network to perform better when optimizing for particular goals—epitomized by effectively charging end users for internet access. (ECF No. 1-1 at 11.) The problem the '459 Patent aims to solve is specific to computer networks. Thus, the claims at issue here are unlike the generic 'do it on a computer' claims so often invalidated under

9

*Alice*. *See, e.g.*, *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1243 (Fed. Cir. 2016) (finding certain claims unpatentable and stating "is not enough to point to conventional applications and say 'do it on a computer.'").

The Court also finds the key cases Defendants rely on distinguishable. For example, Defendants argue the claims at issue here are like the claims at issue in *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089 (Fed. Cir. 2016). (ECF No. 77 at 15-16.) But in *FairWarning*, the Federal Circuit found the asserted claims covering the implementation of rules for detecting fraud in healthcare data were directed to an abstract idea because the rules asked "the same questions (though perhaps phrased with different words) that humans in analogous situations detecting fraud have asked for decades, if not centuries." *Id.* at 1095. Thus, even though the claims required that the rules were applied by a computer, they were not patent eligible. *See id.* In contrast, and as explained above, the claims of the '459 Patent are directed to a system with no similar historical analogue that cannot be easily recreated in a human person's mind.

The Court further disagrees with Defendants that the claims at issue here are ineligible because they are like the claims at issue in *Elec. Power*, 830 F.3d 1350. (ECF No. 92 at 8.) The Federal Circuit found that those claims were directed to an abstract idea because they were directed to a "process of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions." *Id.* at 1354. The Federal Circuit went on to contrast the claims at issue there with non-abstract claims directed to "computer-functionality improvements[.]" *Id.* But the claims of the '459 Patent are just that—directed to computer functionality improvements—especially from the perspective of someone like a hotel owner who charges for temporary internet access. And that is the case even though the purported improvement of the '459 Patent is to a computer network, not a singular computer. *See, e.g.*, *DDR Holdings*, 773 F.3d at 1257.

Finally, the Court is unpersuaded by Defendants' argument that the claims of the the '459 Patent are directed to an abstract idea because they do not recite a specific

structure or implementing mechanism. (ECF Nos. 77 at 15, 92 at 9-10.) The specific structure or implementing mechanism is the redirection server. (ECF No. 1-1 at 9-10, 15.) In claim 91, the redirection server is configured to modify at least a portion of the rule set it applies as a function of time. (*Id.* at 15.)

Having rejected Defendants' primary arguments and found that the claims of the '459 Patent are directed to a solution to a problem specifically arising in the realm of computer networks, the Court finds that the claims of the '459 Patent are not directed to an abstract idea at step one of the *Alice* inquiry. Thus, the Court will not proceed to step two. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016) ("Because the claims are not directed to an abstract idea under step one of the *Alice* analysis, we do not need to proceed to step two of that analysis."). And the Court will therefore deny Defendants' motions to dismiss.

## V.   CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of Defendants' motions to dismiss.

It is therefore ordered that Defendants' motions to dismiss (ECF Nos. 77, 78, 79) are denied.

DATED THIS 23rd day of December 2019.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE