1

2

3      UNITED STATES DISTRICT COURT

4      DISTRICT OF NEVADA

5      * * *

6   LINKSMART WIRELESS TECHNOLOGY,              Case No. 2:18-cv-00862-MMD-NJK
    LLC,
7                                               CLAIM CONSTRUCTION ORDER
                              Plaintiff,
8        v.

9   CAESARS ENTERTAINMENT
    CORPORATION, *et al.*,
10
                              Defendants.
11

12  **I.    SUMMARY**

13         Plaintiff Linksmart Wireless Technology, LLC alleges that Defendants Caesars

14  Entertainment Corporation, Golden Nugget, Inc., Landry's Inc., Las Vegas Sands Corp.,

15  MGM Resorts International, and Wynn Las Vegas LLC infringe U.S. Reissued Patent No.

16  RE46,459 (the "'459 Patent") (ECF No. 1-1)[1] in this consolidated patent case[2] because

17  they have systems at their hotels that ask guests for login information the first time those

18  guests connect to the WiFi. (ECF No. 1.) This Order addresses the disputed claim terms

19  the parties presented for the Court to construe.

20  **II.   BACKGROUND**

21         The background facts included in this paragraph are adapted from the Complaint.

22  (ECF No. 1.) The '459 Patent is entitled "User specific automatic data redirection system."

23  (*Id.* at 2.) The '459 Patent claims priority to U.S. Provisional Pat. App. No. 60/084,014 (the

24  "'014 Application"), filed on May 4, 1998 (ECF No. 1-2 at 2), which primarily consists of a

25  _____

26         [1]The '459 Patent reissued from U.S. Patent No. 6,779,118 (the '118 Patent). (ECF
    No. 110 at 5.)

27         [2]The Court consolidated Case Nos. 2:18-cv-00864-MMD-NJK, 2:18-cv-00865-
    MMD-NJK, 2:18-cv-00867-MMD-NJK, and 2:18-cv-00868-MMD-NJK under this case
28  number. (ECF No. 45.)

report authored by the '459 Patent's co-inventors (ECF No. 1 at 4). The '459 Patent centers on an allegedly novel and innovative system featuring a "redirection server" that mediates an end user's internet access based on rules regarding parameters such as time, or the location from which an end user is accessing the internet. (*Id.* at 4-6.) The redirection server can therefore filter the end user's requests based on rules programmed in the redirection server. (*Id.* at 5-6.) "By way of example, rule sets could be programmed such that a user would need to access a location, e.g., a page with advertising, before being able to freely surf the Web." (*Id.* at 6.) Plaintiff alleges Defendants infringe claims 91-99, 108-120, and 122-125 of the '459 Patent. (ECF No. 110 at 8 n.4.)

Both the '459 Patent and the '118 Patent were previously litigated, and the '118 Patent was subject to six reexamination proceedings and the reissue proceedings that resulted in the '459 Patent. (ECF No. 110 at 6.) The Court is therefore not construing the '459 Patent on a blank slate. More specifically, the '118 Patent was litgated in the Eastern District of Texas, where United States Magistrate Judge Charles Everingham issued a claim construction order construing terms similar to the terms at issue here on June 30, 2010. (ECF No. 110-6 (the "Texas Order").) Further, the Patent Trial and Appeal Board ("PTAB") of the United States Patent and Trademark Office ("USPTO") declined to institute an Inter Partes Review ("IPR") proceeding filed by Panasonic Avionics Corp (the "Panasonic IPR") regarding the '459 Patent on May 14, 2019. (ECF No. 110-5 ("Panasonic IPR Order").) While it is not, of course, a claim construction order, the Panasonic IPR Order also contained some discussion of disputed claim terms addressed in this order. (*Id.*) Moreover, the Panasonic IPR features prominently in the parties' arguments regarding the "redirection server" term. In addition, District Judge Andrew J. Guilford of the Central District of California issued an order construing certain terms in the '459 Patent—which substantially overlap with the disputed terms here—in a different litigation involving the '459 Patent on December 13, 2019. (ECF No. 110-13 (the "California Order").) The parties also rely on the both the Texas Order and the California Order to

1    support their claim construction arguments.[3] (ECF Nos. 110, 111, 113, 114.) The Court

2    will therefore refer to these past decisions to the extent it deems appropriate in the

3    discussion below.[4]

4         The Court held a claim construction hearing on May 4, 2020. (ECF No. 134 (the

5    "Hearing").) Counsel for Plaintiff and Defendants offered argument on the disputed and

6    allegedly indefinite terms discussed below. In pertinent part, Plaintiff's counsel stated at

7    the Hearing he would also be amenable to a construction of "user's rule set" / "users' rule

8    set" as "a set of rules that apply during a user's or users' session," which differs from the

9    construction Plaintiff proposed in its briefing. The Court refers to the Hearing below when

10   applicable.

11   **III.    LEGAL STANDARD**

12        Patent claim construction is a question of law for the Court. *See Markman v.*

13   *Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). When interpreting claims, a court's

14   primary focus should be on the intrinsic evidence of record, which consists of the claims,

15   the specification, and the prosecution history. *See Phillips v. AWH Corp.*, 415 F.3d 1303,

16   1314-17 (Fed. Cir. 2005) (en banc). The Court should begin by examining the claim

17   language. *See id.* at 1312. Claim language should be viewed through the lens of a person

18   of "ordinary skill in the relevant art at the time of the invention." *SanDisk Corp. v. Memorex*

19   *Prods., Inc.*, 415 F.3d 1278, 1283 (Fed. Cir. 2005). If the claim language is clear on its

20   face, then consideration of the other intrinsic evidence is limited "to determining if a

21

22        [3]As a particularly pertinent example, Plaintiff states in its responsive claim
23   construction brief it is amenable to the construction of "redirection server" adopted in the
     California Order, which is "a server that at least must be capable of redirecting a user to a
24   network location that is different from the network location in the user's request." (ECF No.
     113 at 5.) This differs from the construction proposed in Plaintiff's opening brief. Similarly,
25   Plaintiff stated it was fine with 'no construction necessary,' as adopted in the California
     Order, instead of 'plain and ordinary meaning' as requested in its opening claim
26   construction brief, for the term "Redirection Server Programmed With A [User's/Users']
     Rule Set[.]" (*Id.* at 7.)

27        [4]The Court also notes this is not the first order it has issued in this case. The Court
28   previously denied Defendants' motions to dismiss, agreeing with  Plaintiff that the '459
     Patent is directed to a solution to a problem specifically arising in the realm of computer
     networking. (ECF No. 112.)

1  deviation from the clear language of the claims is specified." *Interactive Gift Exp., Inc. v.*
2  *Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001).

3     A court should give the claim's words their "ordinary and customary meaning."
4  *Phillips*, 415 F.3d at 1312-13 (quotation omitted). In construing a claim term's ordinary
5  meaning, the context in which a term is used must be considered. *See ACTV, Inc. v. Walt*
6  *Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003). Both asserted and unasserted claims
7  of the patent also can add meaning to a disputed claim term as claim terms normally are
8  used consistently throughout the patent. *See Phillips*, 415 F.3d at 1314.

9     "[C]laims must be read in view of the specification, of which they are a part." *Id.* at
10  1315 (quotation omitted). The specification can offer "practically incontrovertible directions
11  about a claim meaning." *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir.
12  2009). "When consulting the specification to clarify the meaning of claim terms, courts
13  must take care not to import limitations into the claims from the specification." *Id.*
14  "[A]lthough the specification may well indicate that certain embodiments are preferred,
15  particular embodiments appearing in the specification will not be read into claims when
16  the claim language is broader than such embodiments." *Tate Access Floors, Inc. v.*
17  *Maxcess Techns., Inc.*, 222 F.3d 958, 966 (Fed. Cir. 2000) (quotation omitted). "By the
18  same token, the claims cannot enlarge what is patented beyond what the inventor has
19  described in the invention." *Abbott Labs.*, 566 F.3d at 1288 (internal quotation omitted).
20  "Likewise, inventors and applicants may intentionally disclaim, or disavow, subject matter
21  that would otherwise fall within the scope of the claim." *Id.*

22     In addition to the specification, a court should consider the patent's prosecution
23  history, which consists of "the complete record of the proceedings before the PTO and
24  includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317.
25  However, because the prosecution represents an "ongoing negotiation" rather than the
26  "final product" of the negotiation, "it often lacks the clarity of the specification and thus is
27  less useful for claim construction purposes." *Id.* Consulting the prosecution history can,
28  however, be helpful in determining whether the patentee disclaimed an interpretation

1  during prosecution. *See Research Plastics, Inc. v. Federal Packaging Corp.*, 421 F.3d

2  1290, 1296 (Fed. Cir. 2005). "Under the doctrine of prosecution disclaimer, a patentee

3  may limit the meaning of a claim term by making a clear and unmistakable disavowal of

4  scope during prosecution." *Purdue Pharma L.P. v. Endo Pharm. Inc.*, 438 F.3d 1123, 1136

5  (Fed. Cir. 2006).

6       If the claim language is not clear after reviewing all intrinsic evidence, then the Court

7  may refer to extrinsic evidence such as expert testimony, inventor testimony, dictionaries,

8  and learned treatises. *See Zodiac Pool Care, Inc. v. Hoffinger Indus., Inc.,* 206 F.3d 1408,

9  1414 (Fed. Cir. 2000).

10  **IV.  DISCUSSION**

11       The parties have narrowed[5] the contested claim terms to three sets of terms in the

12  '459 Patent, and Defendants contend an additional four sets of claim terms are indefinite.

13  (ECF Nos. 110, 111.) Summaries of their proposed constructions of each disputed term

14  are presented in comparison charts below. The Court will address each of the disputed

15  terms, followed by the terms Defendants contend are indefinite.

16      **A.  Disputed Terms**

17         **1.  "redirection server" (claims 91-99, 108-120, 122, and 125)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "a server logically located between the user's computer and a network that controls the user's access to the network and is capable of redirecting a user to a network location that is different from the network location in the user's request" | "a server configured to redirect a user to a location on the public network that is different from the network location in the user's request" |

24       The parties' primary dispute as to this term is whether the redirection server must

25  redirect a user to a different location on the public network, as Defendants argue, or simply

26  to some location other than the location the user requested, as Plaintiff argues. (ECF Nos.

27  _____

28      [5]The parties agree on the construction of four sets of claim terms. (ECF No. 110 at 7-8.)

110 at 9, 111 at 7.) Plaintiff's proposed construction is broader because it includes redirection to a location on a private network as well as a public network. (ECF No. 110 at 9.)

Plaintiff argues its proposed construction is consistent with the intrinsic evidence, along with constructions adopted in the Texas Order and the Panasonic IPR Order. (*Id.* at 8-10.) Plaintiff further argues that Defendants seek to improperly import a limitation—that the user is redirected to a location on the public network—without the requisite clear and unambiguous intent from the patentees that they wanted to impose this limitation. (*Id.* at 9.) Defendants counter that the intrinsic evidence and Plaintiff's own arguments to the PTAB in the Panasonic IPR support their view that the redirection must be to a location on the public network. (ECF No. 111 at 7.) Defendants further argue there is no support in the intrinsic record for redirection to a private network, as Plaintiff argues, and distinguished prior art on that basis before the PTAB in the Panasonic IPR—where Plaintiff argued that its invention was innovative because it redirected users to other locations on the public internet. (*Id.* at 8, 10.) Defendants therefore argue that Plaintiff disclaimed the construction it seeks here in the Panasonic IPR. (*Id.* at 10.) Defendants also argue Plaintiff's proposed construction excludes an embodiment. (*Id.* at 10-11.)

The Court agrees with Defendants because the Court finds Plaintiff disclaimed the construction it seeks here in the Panasonic IPR. While all parties argue Plaintiff's brief opposing institution of the Panasonic IPR and the Panasonic IPR Order support their position, having reviewed those documents, the Court agrees with Defendants that Plaintiff specifically argued in the Panasonic IPR that the innovation embodied in the '459 Patent is the redirection server's ability to redirect a user from one public network location to the other. It would therefore violate the doctrine of prosecution history disclaimer—and be unfair—were the Court to adopt Plaintiff's proposed construction here.

To start, the Federal Circuit has extended the doctrine of prosecution history disclaimer to statements made during IPR proceedings. *See Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017) ("we hold that statements made by a patent

owner during an IPR proceeding, whether before or after an institution decision, can be considered for claim construction and relied upon to support a finding of prosecution disclaimer."). Thus, the Court will examine the statements Plaintiff made in successfully resisting the institution of the Panasonic IPR.

In that proceeding, Plaintiff explained that the "'459 patent's claims are directed to a system for Internet access in a server that dynamically redirects a user requesting access to an Internet site, a 'redirection server,' based on rules." (ECF No. 111-6 at 9.) Based on these rules, "the redirection server may modify the user's request for an Internet location to redirect it to a different Internet location." (*Id.*) Plaintif later stated in that same brief opposing institution of the Panasonic IPR that "[r]edirection' of a user accessing the Internet is central to the patented invention." (*Id.* at 13 (internal quotation marks omitted).) Plaintiff further elaborated that the '459 Patent's redirection server redirects the user from one internet location to another internet location. (*Id.* at 14.) Plaintiff later characterized its own position in a prior reexamination proceeding as arguing that "the prior art failed to teach a 'redirection server' because the credential server did not 'redirect a request for one Internet site to a different Internet site.'" (*Id.* at 19.) "Consistent with Linksmart's prior statement to the Board, the '459 patent uniformly describes "redirection" as modifying a user's request for an Internet network location to request a different Internet network location." (*Id.*) Plaintiff made other statements like this throughout its brief, including in distinguishing a prior art reference referred to as Malkin. (*Id.* at 20, 21-24.)

The PTAB was persuaded by Plaintiff's arguments and declined to institute the Panasonic IPR. (ECF No. 111-7.) And in the Panasonic IPR Order, the PTAB indicated it was persuaded by Plaintiff's description of the redirection server summarized above because it found "that an essential function of the redirection server of the '459 patent is to redirect users to Internet locations that are different from those in the user's request." (*Id.* at 13.) The PTAB summarized Plaintiff's argument distinguishing Malkin as "Malkin does not teach redirecting the user's data packages to any location on the Internet." (*Id.* at 17.) The PTAB went on to agree with Plaintiff, finding that Malkin did not disclose the

claimed redirection server, and that the petitioner's two other cited references did not either, so the petitioner was unlikely to prevail on its obviousness challenge to the '459 Patent. (*Id*. at 18-19.) The PTAB accordingly declined to institute the IPR. (*Id*. at 19, 21.)

Based on the summary of Plaintiff's argument in the Panasonic IPR provided above, the Court finds Plaintiff argued in the Panasonic IPR that the redirection server redirects the user from one internet—or public—location to another internet location, and the PTAB found that argument persuasive. Throughout Plaintiff's brief opposing institution of the Panasonic IPR, Plaintiff argued that the redirection server redirects a user from the location on the public internet the user requested to another location on the public internet based on the rule set applied to that user. *See supra*. Plaintiff also never argued in the Panasonic IPR that the redirection server must be configured to allow a user to be redirected to a private network location. Plaintiff's argument in the Panasonic IPR thus aligns with Defendants' proposed construction here, not Plaintiff's.

Plaintiff would like the Court to construe redirection server as allowing for redirection of a user's request to either a public or private network location. But Plaintiff cannot have it both ways. Plaintiff disclaimed the argument it makes here through its arguments in the Panasonic IPR. *See Aylus Networks*, 856 F.3d at 1362 (holding that statements made by a patent owner in an IPR proceeding may support a finding of prosecution history disclaimer at claim construction).

Plaintiff's argument to the contrary both in its responsive brief and at the Hearing— that Defendants take Plaintiff's statements in the Panasonic IPR out of context—is unpersuasive. (ECF No. 113 at 6-7.) Plaintiff specifically argues that it was merely attempting to distinguish Malkin because Malkin did not disclose a redirection server, and its statements discussed above "were not intended to require the redirection server to redirect to a public network[.]" (*Id*. at 7.) It is probably true that Plaintiff did not intend to estop itself from making the claim construction argument it attempts to make here. But that is exactly what Plaintiff did. Again, the Court finds Plaintiff argued in the Panasonic IPR that the redirection server must be configured to redirect a user to a location on the

1  public network different from the public network location the user requested, and the PTAB

2  accepted this argument, though the PTAB's decision does not appear to have turned on

3  its acceptance of this argument. (ECF No. 111-7 at 13-21 (declining to extensively discuss

4  whether the redirection server must redirect a user from one public network location to

5  another after stating that doing so is an essential function of the '459 Patent).) Thus,

6  Plaintiff's approach in its responsive brief and at the Hearing of shifting attention away

7  from what Plaintiff said the redirection server must do in the Panasonic IPR to what

8  Malkin's redirection server did not do is ultimately unpersuasive.[6] (ECF No. 113 at 6-7.)

9      Moreover, the intrinsic evidence also favors adopting Defendant's proposed

10  construction. As Defendants argue, the asserted claims require that the redirection server

11  be programmed with a user's rule set to "control data passing between the user and a

12  public network." (ECF No. 111 at 8 (citing the '459 Patent at claims 91-98, 108-111).)

13  Thus, the redirection server must exert control over the user's interaction with the public

14  network. And as Defendants also argue, while the asserted claims are silent as to whether

15  the redirection server must redirect the user from a public network location to another

16  public network location, they also do not explicitly specify that the redirection server must

17  be capable of redirecting the user from some network location to a private network

18  location. (*Id.*) Thus, the claim language itself does not explicitly favor either sides'

19  construction. The Court will therefore look to the specification of the '459 Patent.

20      And even Plaintiff's counsel conceded at the Hearing that the specification of the

21  '459 Patent exclusively contains examples of the redirection server redirecting a user from

22  one public network location to the other. (ECF No. 1-1 ('459 Patent) at 5:27-8:29.) This

23  weighs in favor of Defendants' proposed construction. *See Phillips*, 415 F.3d at 1315

24  ("[C]laims must be read in view of the specification, of which they are a part.") (quotation

25  _____

26      [6]It does not appear that the defendants in the case from which the California Order
    issued made exactly the same argument Defendants make here. There, Judge Guilford

27  only mentioned the statements the PTAB made in the Panasonic IPR Order, and made
    no reference to any arguments Plaintiff made in the underlying briefing. (ECF No. 110-13

28  at 14.) Regardless, the Court disagrees with the construction of "redirection server"
    adopted in the California Order.

omitted). Instead, in response to a question from the Court, Plaintiff's counsel pointed to the following passage as the only support for Plaintiff's proposed construction in the specification:

> It will also be clear that the invention may be implemented on a non-IP based networks which implement other addressing schemes, such as IPX, MAC addresses and the like. While the operational environment detailed in the preferred embodiment is that of an ISP connecting users to the Internet, it will be clear to one skilled in the art that the invention may be implemented in any application where control over users' access to a network or network resources is needed, such as a local area network, wide area network and the like. Accordingly, neither the environment nor the communications protocols are limited to those discussed.

(ECF No. 1-1 at 8:30-40.) Defendants' counsel responded to this contention at the Hearing by arguing that the asserted claims do not claim the alternate embodiment described in the passage above, and that their proposed construction of "redirection server" was more consistent with the claims when they are read in light of the specification. And the Court tends to agree. Reading the '459 Patent as a whole, the patentees were attempting to claim an invention including a redirection server capable of redirecting a user from one public network location to another.

In sum, because Plaintiff disclaimed the construction it now seeks in the Panasonic IPR and because the Court agrees with Defendant's arguments, the Court will adopt Defendants' proposed construction. The Court will construe "redirection server" to mean "a server configured to redirect a user to a location on the public network that is different from the network location in the user's request[.]"

### 2. "user's rule set" / "users' rule set" (claims 91-99, 108-120, and 122-125)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Elements or conditions that apply during a user's or users' session | set of rules that apply during and uniquely to a user's session or a group of users' sessions |

The parties' key dispute as to this term is whether the rules are unique to a particular user or set of users. (ECF No. 110 at 13-14, 111 at 11-12.) Defendants argue they must

1    be. (ECF No. 111 at 11-12.) Defendants primarily rely on the specification to support this

2    view. (*Id.*) Plaintiff's view, in contrast, is that more than one user or set of users can have

3    the same rule set. (ECF No. 110 at 13-14.) Plaintiff argues its view is more consistent with

4    the plain meaning of the claim terms and the specification. (*Id.*) But the Court again agrees

5    with Defendants.

6           Plaintiff's counsel effectively conceded at the Hearing that Defendants' proposed

7    construction is correct. First, though less importantly, he conceded Plaintiff was amenable

8    to a construction that dropped Plaintiff's proposed 'elements or conditions,' resulting in a

9    construction acceptable to Plaintiff of a "set of rules that apply during a user's or users'

10   session." But this concession came in response to Defendants' persuasive argument that

11   a "rule set" cannot be merely an "element," though Plaintiff's original proposed construction

12   made the two equivalent. So it was a meaningful concession.

13          But more importantly, Plaintiff's counsel explained at the Hearing that, in Plaintiff's

14   view, a user could initially get a standard rule set even though it would be correlated to a

15   particular user or group of users as soon as the user idenfied herself (or group of users

16   identified themselves), and thus became that user's rule set after being correlated to the

17   user (or group of users). It appeared Plaintiff's counsel was trying to draw a distinction

18   between "correlated to" and "unique to." But the Court finds this is a distinction without a

19   difference. And that is why the Court finds Plaintiff's counsel's explanation at the hearing

20   was an effective concession that Defendants' proposed construction is more correct. If all

21   rule sets must be correlated to a particular user or group of users, it is illogical that rule

22   sets could be shared amongst users or groups of users.[7]

23

24

_____

25          [7]Plaintiff also argues that if the Court adopts Defendants' proposed construction,
     the Court would also be adopting the view "that no rule set in the system can be the same,"
26   which is inconsistent with the intrinsic evidence. (ECF No. 113 at 9.) The Court disagrees.
     A rule set can be unique to a user or group of users without being entirely unique, meaning
27   the only rule set in the universe containing that particular set of rules. As explained
     throughout the specification of the '459 Patent, the rule set only has to be unique in the
28   sense that it is personalized to, or particular to, a user.

As the term "user's rule set" is used throughout the '459 Patent, a rule set cannot apply to every possible user of the system. It must, as Defendants argue, be unique to a user or set of users. The Court begins with the claim language. In the asserted claims, the rule set is always described as "a user's rule set" or "a users' rule set" correlated to a temporarily-assigned network address. (*See, e.g.*, ECF No. 1-1 at 19:62-20:54.) The use of "a" right before 'user's/users,'' combined with the rule set's consistent combination with "a" temporarily-assigned network address, means that the rule set must be unique to that particular user or group of users. Said otherwise, the asserted claims consistently refer to one rule set that applies to a user or group of users identified by one particular temporarily-assigned network address. (*See, e.g.*, *id.*) The rule set must therefore be unique to that user or particular set of users.

The specification also supports Defendants' proposed construction, beginning with the title—"User Specific Automatic Data Redirection System." (ECF No. 1-1 at 2.) A user-specific system is unique to that user. Further, and as Defendants argue (ECF No. 114 at 10), other parts of the specification also point towards rule sets being specific to a particular user or group of users. For example, "[t]he rule sets specify elements or conditions about the user's session." (ECF No. 1-1 at 4:54-55.) By using "the" before "user's," the patent drafter is referring to one particular user. Similarly, the "Auto-Navi" functionality of the authentication server is capable of transmitting "the user's new rule set" to the redirection server—or a new rule set unique to that user. (*Id.* at 5:33-34; *see also id.* at 6:10, 6:47, 7:35 (referring to "the user's rule set").) The Abstract also explains that the redirection server "receives the redirection rule sets for each user." (*Id.* at 2.) Thus, the specification consistently describes rule sets as being unique to a particular user or set of users.

///

///

1    In sum, the Court agrees with Defendants because the intrinsic evidence supports

2  their view that the rule set or rule sets must be unique to a user or group of users.[8] The

3  Court therefore finds that user's rule set" / "users' rule set" means "set of rules that apply

4  during and uniquely to a user's session or a group of users' sessions[.]"

5

6    3.    "redirection server programmed with a user's rule set" /
"redirection server programmed with a users' rule set" (claims
91-99, 108-120, and 122-125)

7

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| plain and ordinary meaning. "Redirection server" and "[user's/users'] rule set" will be construed separately | "a redirection server that receives and implements an authenticated user's rule set" |

11    While Plaintiff argues this claim does not require construction,[9] Defendants argue

12  that, to function, the redirection server must receive a rule set from the accounting server

13  keyed to a particular, authenticated user. (ECF Nos. 110 at 10-13, 111 at 13.) Defendants

14  further argue this authentication concept is key to the entire purported invention, drawing

15  logical inferences from the content of the specification. (ECF No. 111 at 13.) Plaintiff

16  counters that Defendants seek to improperly import two limitations into the claim language

17  because they do not identify language in the '459 Patent showing the patentees' clear

18  intent to do so. (ECF No. 110 at 11.) As to authentication, Plaintiff argues adding such a

19  limitation will confuse the jury because there is no such thing as an authenticated rule set

20  in the '459 Patent, and Defendants merely point to preferred embodiments to support their

21  proposed construction. (ECF No. 110 at 12-13.) The Court agrees with Plaintiff.

22

23

24    [8]Defendants' counsel stated at the Hearing they would also be amenable to "some but not all" as adopted in the California Order (ECF No. 110-13 at at 15-16) instead of "uniquely to," but the Court declines to adopt "some but not all." The Court is persuaded by Defendants' arguments as to this term, so would prefer to adopt Defendants' proposed construction in the absence of any compelling reason to adopt a fallback choice that Defendants argue does the same work as their first choice.

25

26

27    [9]While Plaintiff requested 'plain and ordinary meaning' in its opening brief (ECF No. 110 at 10), as noted above, Plaintiff indicated it is also amenable to 'no construction necessary' for this term. (ECF No. 113 at 7.)

28

1    The Court declines to specifically construe this term because the Court has already

2    construed the term's two key sub-terms, so construing it further would lead to a confusing

3    nested meaning for these terms. Further, the Court agrees with Plaintiff that construing

4    this term in line with Defendants' proposal would improperly import limitations from the

5    specifications into the claims. Beginning with the first point, were the Court to accept

6    Defendants' proposal, "redirection server" and "user's rule set" would have different

7    meanings when used separately than when they are combined with the term "programmed

8    with." That could confuse the jury when it is asked to conduct the infringement analysis. It

9    is also illogical, as claim terms should have the same meaning throughout a patent.

10   Moreover, as the Court accepted Defendants' two other proposed constructions for

11   "redirection server" and "user's rule set," were the Court to accept Defendants' proposed

12   construction here, one way to read the term would be the confusingly nested "a server

13   configured to redirect a user to a location on the public network that is different from the

14   network location in the user's request that receives and implements an authenticated

15   user's set of rules that apply during and uniquely to a user's session." That is unworkable.

16   Further, unlike "redirection server" and "user's rule set," where Defendants'

17   proposed constructions had support in the asserted claims, Defendants only point to

18   "user's rule set" in the asserted claims themselves to support their proposed construction

19   as to this term. (ECF No. 111 at 13, 114 at 12.) But the Court has separately construed

20   "user's rule set" above. And thus the Court is unpersuaded this same term also supports

21   importing the authentication and receiving limitations that Defendants ask the Court to

22   import here. Conversely, the Court is persuaded by Plaintiff's argument that it is improper

23   to import the authentication and receiving limitations into this term because Defendants'

24   argument is premised on preferred embodiments, not claim language. (ECF No. 113 at 8;

25   *see also* ECF No. 111 at 13 (referring only to preferred embodiments).) And at the Hearing,

26   Defendants' counsel also focused on preferred embodiments described in the

27   specification, not claim language. Further, nothing that Defendants pointed to in the

28   specification constitutes a clear disavowal of claim scope. (ECF No. 111 at 13, 114 at 12.)

Thus, Defendants have not "demonstrate[d] an intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1334 (Fed. Cir. 2009) (citation and internal quotation marks omitted). The Court declines to import limitations into these claim terms.

In addition, Plaintiff's counsel pointed out at the Hearing there was no real dispute as to the meaning of "programmed with," and Defendants's counsel did not appear to dispute its meaning. And as "programmed with" is the only component of these claim terms the Court has not otherwise construed, it is unnecessary to further construe these claim terms.

In sum, the Court agrees with Plaintiff that no further construction of "redirection server programmed with a user's rule set" / "redirection server programmed with a users' rule set" is required.

### B. Allegedly Indefinte Terms

Plaintiff and Defendants structure this portion of their claim construction briefs differently, but the Court finds Defendants' structure more logical because it addresses claim terms with common elements together instead of piecemeal. The parties also used this structure to present their arguments at the Hearing. Thus, the Court adopts the structure Defendants used.

Defendants challenge the terms discussed below as indefinite under 35 U.S.C. § 112, ¶ 2. (ECF No. 111 at 6-7.) Under this statutory subsection, "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

///

///

///

**1.** **"the rule set" (claim 108) / "the modified rule set" (claims 108-110, 122-125) / "initial temporary rule set" (claims 108 and 122) / "standard rule set" (claims 108 and 122)**

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "the rule set" (claim 108, last element) | Not indefinite. Plain and ordinary meaning, which is that "the rule set" in element (e) refers to the "user's rule set correlated to a temporarily assigned network address" from element (a) as modified in claim elements (c) and (d), and later referred to as "the modified rule set" in element (e) | Indefinite. |
| "the modified rule set" (claims 108-110, 122-125) | Plain and ordinary meaning, which is "user's rule set correlated to a temporarily assigned address as modified in element (c) and (d)" | Indefinite. |
| "initial temporary rule set" (claims 108 and 122) | Plain and ordinary meaning, which is "rule set applied by the redirection server when a user computer first attempts to connect to the public network" | Indefinite. |
| "standard rule set" (claims 108 and 122) | Plain and ordinary meaning, which is "a predefined rule set to be applied after the initial temporary rule set" | Indefinite. |

These terms all center on the "rule set" discussed throughout the '459 Patent and particularly in claim 108, which is partly why the Court agrees with Defendants that they should be addressed in the same section of this order. Defendants basically argue that all of these terms are indefinite because they logically should only refer to one rule set, but particularly claim 108 seems to discuss at least four different rule sets—and the terms are thus indefinite. (ECF No. 111 at 13-16.) Plaintiff responds that the "rule set" used in claim 108 is a temporary rule set assigned to a particular user, and "the modified rule set" refers to that same user's rule set. (ECF No. 110 at 16-17, 20-21.) Plaintiff goes on to argue that "initial temporary rule set" and "standard rule set" should merely be assigned their plain and ordinary meaning, which is a rule set used for a limited amount of time when the user connects to the system, and a "pre-defined" rule set, respectively. (*Id.* at 21-22.) Overall, the Court agrees with Plaintiff.

More specifically, the Court agrees with Plaintiff that the rule set terms inform a person of ordinary skill in the art ("POSA") about the scope of the claimed invention with reasonable certainty. Defendants' challenge to these terms centers on claim 108, which claims:

A system comprising:

[a] a redirection server programmed with a user's rule set correlated to a temporarily assigned network address;

[b] the rule set containing at least one of a plurality of functions used to control data passing between the user and a public network;

[c] the redirection server being configured to automatically modify at least a portion of the rule set while the rule set is correlated to the temporarily assigned network address;

[d] the redirection server being configured to automatically modify at least a portion of the rule set as a function of some combination of time, data transmitted to or from the user, or location the user accesses; and

[e] the modified rule set includes an initial temporary rule set and a standard rule set, and the redirection server utilizes the temporary rule set for an initial period of time and thereafter utilizes the standard rule set while **the rule set** is correlated to the temporarily assigned network address.

(ECF No. 1-1 at 19:62-20:14 (lettering and emphasis added).) The crux of Defendants' argument is that the final, bolded appearance of "the rule set" in element [e] is indefinite because it lacks an antecedent basis. (ECF No. 114 at 13.) "But the lack of an antecedent basis does not render a claim indefinite as long as the claim 'apprises one of ordinary skill in the art of its scope and, therefore, serves the notice function required by [§ 112 ¶ 2].'" *In re Downing*, 754 F. App'x 988, 996 (Fed. Cir. 2018) (citation omitted). And here, the final, bolded appearance of "the rule set" does.

As Plaintiff argues, "the claim includes antecedent references to 'an initial temporary rule set' and 'a standard rule set' that do not refer to these claim requirements as 'the rule set.'" (ECF No. 113 at 11.) Primarily for this reason, it is reasonably clear that the final appearance of "the rule set" in element [e] refers back to the "user's rule set correlated to a temporarily assigned network address" described in element [a]. (ECF No.

1   1-1 at 19:62-20:14.) More generally, claim 108 is simply not as confusing as Defendants

2   try to make it out to be. Defendants' overly formalistic attack on this claim language ignores

3   the relatively forgiving standard that the claim language must only reasonably appraise a

4   POSA of its scope. And here, "the rule set" and the related 'rule set' terms do.

5          In sum, Defendants have not shown by clear and convincing evidence these claim

6   terms are indefinite.

7

8                         2.      "initial period of time" (claims 108 and 122)

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "initial period of time" (claims 108 and 122) | Not indefinite; plain and ordinary meaning, which is "period of time when the initial temporary rule set is utilized before the conditions are met to apply the standard rule set" | Indefinite. |

14         Defendants argue this term is indefinite because nothing in the '459 Patent explains

15  how long the period of time is, and is further indefinite because the patent appears to

16  define this term as a condition that exists until another condition is fulfilled—meaning the

17  condition is not triggered by a period of time at all. (ECF No. 111 at 16-17.) Plaintiff

18  essentially responds this does not render the term indefine, it merely confirms that the

19  Court should assign this term its plain and ordinary meaning. (ECF No. 110 at 22-24.)

20  Plaintiff writes:

21          For example, when a person in conversation refers to their "initial reaction"
            to something, the person is referring to their first reaction. Such a statement
22          is usually followed by their reaction after more time passed, or they learned
            additional information. It does not require a specific amount of time to be
23          understood.

24  (*Id.* at 23.) Plaintiff uses this example to support its view that the initial period of time is the

25  period of time where the temporary rule set is used, before switching to the standard rule

26  set. (*Id.*) The Court agrees with Defendants.

27         The issue with Plaintiff's argument is highlighted by Plaintiff's proposed

28  construction: plain and ordinary meaning, which is "period of time when the initial

1    temporary rule set is utilized before the conditions are met to apply the standard rule set[.]"

2    So Plaintiff defines "initial period of time" as not a period of time at all, but as all time before

3    "the conditions are met." (ECF No. 110 at 22.) The Court does not agree this is the 'plain

4    and ordinary meaning' of an "initial period of time." If it was, the Court could never wait 20

5    minutes because 20 minutes may never come unless a mysterious conditional rule was

6    satisfied. Said otherwise, Plaintiff's absurd argument attempts to make time conditional on

7    something that is not time. The Court cannot agree to give this term an impossible

8    meaning, and call it 'plain and ordinary.' Moreover, Plaintiff's example of the

9    'conversational' use of 'initial period of time' is unpersuasive because it does not speak to

10   how a POSA would read this term in an attempt to recreate the invention embodied in the

11   '459 Patent.

12        For the same reasons, the Court is persuaded by Defendants' contrary argument

13   this term is indefinite. In their responsive brief, Defendants primarily argue the Court

14   should find this term indefinite because Judge Guilford did in the California Order, but they

15   also point to the three reasons Judge Guilford found "initial period of time" indefinite. (ECF

16   No. 114 at 14-15.) Those three reasons are persuasive. Specifically: (1) this term defines

17   time as the condition itself without specifying the required length of time (as mentioned

18   above); (2) the specification never refers to an initial period of time; (3) and Plaintiff's

19   proposed construction is entirely unbounded, making it impossible for a POSA to

20   understand the scope of this term. (*Id.*) The Court agrees these three reasons are valid,

21   and weigh in favor of finding "initial period of time" indefinite.

22        In sum, "initial period of time" is indefinite because a POSA would not be able to

23   identify its boundaries with reasonable certainty.

24

25        3.    **"computer network" (claims 98 and 119) / "user side [of the server]" (claims 98-99, 119-120) / "network side [of the server]" (claims 98-99, 119-120)**

26

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "computer network" (claims 98 and 119) | Not indefinite; plain and ordinary meaning | Indefinite. |

27

28

| "user side [of the server]" (claims 98-99, 119-120) | Not indefinite; plain and ordinary meaning | Indefinite. |
|---|---|---|
| "network side [of the server]" (claims 98-99, 119-120) | Not indefinite; plain and ordinary meaning | Indefinite. |

Defendants argue these terms are indefinite because the '459 Patent's claims refer to what appear to be two distinct networks—a public network and a computer network—but a POSA would not understand the relationship between the redirection server and these two networks from the patent's claims and specification, and, at times, these two different networks appear to be the same thing. (ECF No. 111 at 17-18.) Similarly, Defendants argue the "user side" and "network side" terms are indefinite because a POSA would not reasonably understand how to connect the redirection server to the public network from reading the '459 Patent, and therefore could not say which was the user side, or which was the network side. (*Id.* at 18-19.) Said otherwise, Defendants argue these terms are indefinite because a POSA would not understand how to configure the network embodied in the '459 Patent from reading about the relationship between these terms in the '459 Patent itself.

Plaintiff counters that these "terms are not indefinite because they are being used according to their plain and ordinary meanings to" a POSA. (ECF No. 110 at 17.) Plaintiff points to an expert declaration to argue that a POSA would understand the "computer network" referred to in the '459 Patent means the networking infrastructure required to connect the various parts of the patented system, which can be conceptualized as the arrows in the diagrams in the patent that connect the system's constituent parts. (*Id.* at 17-19.) As to "user side" and "network side," Plaintiff argues Defendants seek to create ambiguity where none exists because a POSA would understand how the pieces of the claimed system fit together. (*Id.* at 18-19.) The Court generally agrees with Plaintiff.

The Court does not find the relationship between the components identified by these claim terms confusing. Taking claim 98 as an example, it is reasonably clear that "user side" and "network side" refer to the two logical sides of the redirection server, and

the "computer network" is the portion of the system that connects the "network side" of the redirection server to the internet. (ECF No. 1-1 at 18:51-57.) Figure 2 in the '459 Patent also supports this understanding. (*Id.* at 7.) It shows that the redirection server sits logically between the user's computer and the internet, supporting the view that the redirection server would have a "user side" and a "network side."[10] (*Id.*) And as the "computer network" is connected to the "network side" of the redirection server, it is presumably the arrow coming off the right side of the redirection server in Figure 2, which connects the redirection server to the internet. (*Id.*) In general, these terms all describe the logical relationship between the user, the redirection server, and the internet. The logical relationship between those component parts is reasonably clear. The Court finds that Defendants' arguments as to these terms attempt to overcomplicate something that is conceptually fairly simple. (ECF No. 114 at 15-16.)

In sum, Defendants have not shown by clear and convincing evidence these claim terms are indefinite.

### 4.     "location [or locations] the user accesses" (claims 91-98, 108-111, 114, 117-118)

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "location [or locations] the user accesses" (claims 91-98, 108-111, 114, 117-118) | Not indefinite; plain and ordinary meaning | Indefinite. |

Defendants finally argue the claim terms including the word "location" are indefinite because they are subject to multiple reasonable interpretations. (ECF No. 111 at 19.) Defendants therefore insist they do not inform a POSA about the scope of the invention with reasonable certainty. (*Id.*) Defendants go on to argue that Plaintiff is arguing for plain and ordinary meaning here so it can later pick whatever reasonable interpretation of this

---

[10]Plaintiff presented a helpful demonstrative slide at the Hearing labelling Figure 2 with "network side," "user side," and "computer network," where "computer network" was a highlighted area covering both the 'Internet' and the arrow pointing from the redirection server to the 'Internet.'

1  term best suits its needs in this case, which violates the principle that patents should only

2  have a single scope—citing a Federal Circuit case stating that "[a] patent may not, like a

3  'nose of wax,' be twisted one way to avoid anticipation and another to find infringement."

4  (*Id.* at 20-21 (citing *Amazon.com, Inc. v. Barnesandnoble.com, LLC*, 239 F.3d 1343, 1351

5  (Fed. Cir. 2001)).) Plaintiff responds simply that location has a plain and ordinary meaning,

6  meaning a network location the user accesses. (ECF No. 110 at 24.) "For example, a user

7  going to 'www.google.com' is a 'location the user accesses.'" (*Id.*)

8       Plaintiff's counsel reiterated this point at the Hearing, stating that "location the user

9  accesses" means exactly that—a network location the user actually accessed. In light of

10  this representation from Plaintiff's counsel that this term has a fixed meaning in this case,

11  Defendants' 'nose of wax' argument is unpersuasive. And as that argument is really

12  Defendants' only argument as to this term, the Court is unpersuaded this term is indefinite.

13       In sum, Defendants have not shown by clear and convincing evidence this claim

14  term is indefinite.

15  **V.   CONCLUSION**

16       The Court notes that the parties made several arguments and cited to several cases

17  not discussed above. The Court has reviewed these arguments and cases and determines

18  that they do not warrant discussion as they do not affect the outcome of this claim

19  construction.

20       It is therefore ordered the claim terms discussed herein have the meaning the Court

21  assigned them herein for purposes of this litigation, and are or are not indefinite, as also

22  described herein.

23       DATED THIS 8th day of May 2020.

24

25  _____

26  MIRANDA M. DU
    CHIEF UNITED STATES DISTRICT JUDGE

27

28