UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| LINKSMART WIRELESS TECHNOLOGY, LLC,<br><br>        Plaintiff,<br><br> v.<br><br>GOLDEN NUGGET, INC., *et al.*,<br><br>        Defendants. | Case No. 2:18-cv-00862-MMD-NJK<br><br>ORDER |

## I. SUMMARY

Plaintiff Linksmart Wireless Technology, LLC alleges that Defendants Golden Nugget, Inc., Landry's Inc., Las Vegas Sands Corp., and MGM Resorts International[1] infringe U.S. Reissued Patent No. RE46,459 (ECF No. 1-1 (the "'459 Patent"))[2] in this consolidated patent case[3] because they have systems at their hotels that ask guests for login information the first time those guests connect to the WiFi. (ECF No. 1.) Before the Court are: (1) Defendants' motion to strike the infringement expert report of Plaintiff's expert Mr. Erik de la Iglesia (ECF No. 204 ("Defendants' Motion")); (2) Plaintiff's motion to strike at least portions of invalidity expert reports from Defendants' expert, Mr. Ed Tittel (ECF No. 212 ("Plaintiff's Motion")); and (3) two unopposed motions to seal (ECF Nos.

---

[1]Defendants Caesars Entertainment Corporation and Wynn Las Vegas LLC settled. (ECF No. 213.) The Court granted a joint stipulation to dismiss them on March 15, 2021. (ECF No. 232.) Thus, this order does not refer to them, though some of the briefs either refer to them or initially included them.

[2]The '459 Patent reissued from U.S. Patent No. 6,779,118. (ECF No. 110 at 5.)

[3]The Court consolidated Case Nos. 2:18-cv-00864-MMD-NJK, 2:18-cv-00865-MMD-NJK, 2:18-cv-00867-MMD-NJK, and 2:18-cv-00868-MMD-NJK under this case. (ECF No. 45.)

205, 216).[4] As further explained below, the Court will grant Defendants' Motion primarily because Mr. de la Inglesia offers opinions not disclosed in Plaintiff's initial infringement contentions, and instead based on amended infringement contentions the Court already struck, deny Plaintiff's Motion because Mr. Tittel's supplemental report does not violate the applicable timeliness rules, and he offers opinions in his opening report fairly disclosed in Defendants' infringement contentions, and grant the unopposed motions to seal because the parties have proffered compelling reasons to grant them.

## II.   BACKGROUND

The Court incorporates by reference the relevant factual background provided in the Court's claim construction order, and does not recite it here. (ECF No. 137 ("Claim Construction Order") at 1-3.) As pertinent to these motions, in the Claim Construction Order, the Court construed the term "redirection server" to mean "a server configured to redirect a user to a location on the public network that is different from the network location in the user's request[.]" (*Id.* at 5-10.) This is the construction advanced by Defendants, not Plaintiff. (*Id.*)

On Defendants' motion, the Court recently struck Plaintiff's amended infringement contentions for noncompliance with LPR 1-12, and alternatively because Plaintiff did not show the diligence required for Plaintiff to obtain the Court's leave to file amended infringement contentions, had Plaintiff sought such leave. (ECF No. 203 ("Prior Order").) The Court issued the Prior Order on January 20, 2021. (*Id.*)

Meanwhile, the parties were preparing and serving expert reports. As pertinent here, Plaintiff served Mr. de la Inglesia's expert report on infringement on January 7, 2021. (ECF No. 207 (sealed) at 3.) On that same day, Defendants served Mr. Tittel's invalidity expert report. (ECF No. 212-4 at 35.) On January 15, 2021, Defendants served a supplemental expert report authored by Mr. Tittel. (ECF No. 212-5 at 3.) Defendants move

---

[4]The Court reviewed the corresponding responses, replies, and accompanying documents. (ECF Nos. 206, 207, 210, 214, 215, 218, 220, 221, 222.)

to strike Mr. de la Inglesia's report in its entirety, and Plaintiff moves to strike Mr. Tittel's initial report in part, and his supplemental report in its entirety. (ECF Nos. 204, 212.)

## III. DISCUSSION

The Court first addresses Defendants' Motion, then Plaintiff's Motion, and then the pending motions to seal.

### A. Defendants' Motion

Defendants argue the Court should strike Mr. de la Inglesia's expert report because it is based entirely on theories of infringement raised for the first time in the amended infringement contentions the Court struck in its Prior Order. (ECF No. 204 at 2.) Defendants more specifically argue that Mr. de la Inglesia offers previously undisclosed literal infringement opinions based on the Court's construction of "redirection server," and theories based on the doctrine of equivalents also not disclosed in Plaintiff's operative infringement contentions. (*Id.*) Plaintiff counters that its infringement theory has never changed. (ECF No. 216-2 (sealed) at 5-6.) As to Defendants' literal infringement argument, Plaintiff argues it has always contended that Defendants infringe by redirecting users to Defendants' login portal page when those users attempt to connect to the internet. (*Id.*) As to Defendants' doctrine of equivalents argument, Plaintiff argues that Defendants' argument is inconsistent with Defendants' arguments regarding their own invalidity report. (*Id.* at 7.) The Court agrees with Defendants.

#### 1. Doctrine of Equivalents

Beginning with the parties' doctrine of equivalents arguments, Plaintiff's argument is largely beside the point. (*Id.* at 19-20.) The level of detail provided in Defendants' invalidity contentions is irrelevant to the question of whether the Court should strike the portions of Mr. de la Inglesia's expert report opining on infringement under the doctrine of equivalents. Moreover, in response, Plaintiff acknowledges Defendants' argument that Plaintiff's boilerplate reservation of rights as to the doctrine of equivalents in its operative infringement contentions is insufficient, but then declines to address it. (*Id.* at 19.)

///

1 More relevant to Defendants' actual argument, Plaintiff does not dispute that the only mention of the doctrine of equivalents in its initial, operative infringement contentions is: "To the extent [Defendant] contends that other limitations are not literally infringed, Linksmart asserts that the limitation is infringed under the doctrine of equivalents and reserves the right to supplement these disclosures if and when [Defendant] makes such contentions." (*Id.* at 19.) This sentence appears at the beginning of Plaintiff's infringement contentions, and is not linked to any particular claim or claim limitation. (*Id.*; *see also* ECF No. 189-12 at 4.) Plaintiff's statement, which amounts to a reservation of rights to assert the doctrine of equivalents, does not comply with LPR 1-6(e) (requiring a statement of "[w]hether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality"). Plaintiff also does not dispute that Mr. de la Inglesia provides opinions that include specific, targeted applications of the doctrine of equivalents throughout his report. (ECF Nos. 204 at 8 (providing several references), 207 (sealed) at 114 n.23, 138-139, 140, 146, 152, 184 n.34, 202, 204, 208, 211, 243 n.46, 268-69, 271, 275-76, 278-79 (offering infringement opinions as to specific claim limitations under the doctrine of equivalents), 216-2 (sealed) at 19-20 (declining to dispute that Mr. de la Inglesia offers all of these specific doctrine of equivalents opinions).) Thus, Mr. de la Inglesia is making specific doctrine of equivalents assertions Plaintiff did not make in its operative infringement contentions.[5]

But the "purpose of requiring parties to disclose the basis for their contentions is to make them *explicit* and streamline patent litigation." *Thought, Inc. v. Oracle Corp.*, Case No. 12-CV-05601-WHO, 2016 WL 3230696, at *6 (N.D. Cal. June 13, 2016) (emphasis in original), *aff'd,* 698 F. App'x 1028 (Fed. Cir. 2017).[6] Plaintiff's approach here is contrary to

---

[5] Plaintiff attempted to assert similar doctrine of equivalents arguments in its amended infringement contentions, but the Court struck them in its Prior Order. (ECF No. 203.)

[6] Courts in this District often rely on decisions interpreting the local patent rules of the Northern District of California when interpreting the Local Patent Rules, as does the Court in this order. The rules in the two districts are both similar and serve similar purposes. "The District of Nevada's Local Patent Rules, like the local patent rules for the

4

the purpose of the Patent Local Rules. Plaintiff did not make any explicit doctrine of equivalents arguments in its initial infringement contentions, the Court struck Plaintiff's amended contentions (ECF No. 203), and Plaintiff now seeks to make explicit, specific doctrine of equivalents arguments through Mr. de la Inglesia. Plaintiff's doctrine of equivalents approach violates both the letter and the spirit of the Local Patent Rules. *See Thought, Inc.*, 2016 WL 3230696, at *5-*8 (striking portions of expert report); *see also* LPR 1-6(e) (requiring claim-by-claim argument as to the doctrine of equivalents); *see also KlausTech, Inc. v. Google LLC*, Case No. 10CV05899JSWDMR, 2018 WL 5109383, at *3 (N.D. Cal. Sept. 14, 2018), *subsequently aff'd,* 792 F. App'x 954 (Fed. Cir. 2020) ("expert reports cannot go beyond the bounds of the disclosed infringement theories and introduce new theories not disclosed in the contentions.") (citation omitted).

The Court may sanction noncompliance with the Patent Local Rules following notice and an opportunity to be heard, which Plaintiff received through its response to Defendants' Motion. *See* LR IA 11-8(c). And "[b]oth the Ninth Circuit and [the Federal Circuit Court of Appeals] have concluded that the exclusion of evidence is often an appropriate sanction for a party's failure to comply with the patent local rules." *Phigenix, Inc. v. Genentech, Inc.*, 783 F. App'x 1014, 1020 (Fed. Cir. 2019). The Court will accordingly strike Mr. de la Inglesia's opinions as to the doctrine of equivalents. (ECF No. 207 (sealed) at 114 n.23, 138-139, 140, 146, 152, 184 n.34, 202, 204, 208, 211, 243 n.46, 268-69, 271, 275-76, 278-79 (offering infringement opinions under the doctrine of equivalents).) *See also Thought, Inc.*, 2016 WL 3230696, at *5-*8 (striking infringement theories in expert report first disclosed in stricken amended infringement contentions and not disclosed in initial infringement contentions); *ASUS Computer Int'l v. Round Rock Rsch., LLC*, No. 12-CV-02099 JST (NC), 2014 WL 1463609, at *3 (N.D. Cal. Apr. 11,

---

Northern District of California, are designed to require the parties to provide 'early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery.'" *Silver State Intellectual Techs., Inc. v. Garmin Int'l, Inc.*, 32 F. Supp. 3d 1155, 1161-62 (D. Nev. 2014) (quoting *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365-66 (Fed. Cir. 2006)).

2014) (grating motion to strike doctrine of equivalents arguments from expert reports where the party had only included a placeholder assertion of infringement under the doctrine of equivalents similar to Plaintiff's here in its operative infringement contentions).

### 2. Literal Infringement

Defendants' literal infringement argument in Defendants' Motion sweeps more broadly than its doctrine of equivalents argument because it focuses on "redirection server," present in every asserted claim and discussed throughout much of Mr. de la Inglesia's report. (ECF No. 207 (sealed).) As noted, Defendants argue Mr. de la Inglesia is attempting to introduce a key concept into his analysis of the redirection server claim limitation—that Defendants' portal pages are located on a public network—not present in Plaintiff's operative, initial infringement contentions. (ECF No. 204 at 7-8.) Defendants also note Plaintiff attempted to introduce this same concept in its amended infringement contentions that the Court struck in its Prior Order. (*Id.*) Plaintiff responds that its theory has never changed—it has always argued that the process involving Defendants' portals through which Defendants' hotel guests connect to the internet infringes. (ECF No. 216-2 (sealed) at 7-10.) As above, Plaintiff's argument is not quite responsive to Defendants' argument.

Plaintiff's initial, operative infringement contentions do not argue that Defendants' portals are located on a public network. (*See, e.g.*, ECF No. 189-12 at 9-10 (regarding the Golden Nugget's system).) Mr. de la Inglesia's report does. (*See, e.g.*, ECF No. 207 (sealed) at 254-263 (regarding the Golden Nugget's system); *see also* ECF No. 216-2 at 5-6 (using the same Golden Nugget example).) This is a big difference, especially considering that Plaintiff was advancing a construction of "redirection server" that would have included redirection to a private network location for the first approximately year-and-a-half of this case—including when it served its initial infringement contentions—that the Court rejected in the Claim Construction Order because Plaintiff had disclaimed it in an

*inter partes review* proceeding.[7] (ECF No. 137 at 6-10.) Moreover, there is a difference between a network being publicly-accessible, and a public network location, a distinction that Mr. de la Inglesia ignores. (ECF No. 207 (sealed).) And while Plaintiff argues its infringement theory has not changed, but instead merely incorporates the Court's claim construction of "redirection server" (ECF No. 116-2 at 14-15), the Court disagrees. Mr. de la Inglesia would not need so many paragraphs to explain why Defendants' portals were public networks if that were the case. (ECF No. 107 (sealed) at 27-31.) Plaintiff's operative, initial infringement contentions contain none of this 'public network' discussion. (ECF No. 189-12.) Through Mr. de la Inglesia's report, Plaintiff is attempting to argue a new infringement theory not disclosed in its initial infringement contentions.[8] This is both unfair and violates the Local Patent Rules.

Plaintiff's attempted pivot is specifically impermissible under LPR 1-6(b) and (d), which require early and specific notice of infringement theories.[9] *See also Phigenix*, 783 F. App'x at 1017-18 (affirming the district court's decision to strike an expert report where the party who proffered the report markedly changed its infringement theory, explaining that such a change prejudiced the other party because they were unable to prepare an adequate defense to the new theory); *see also BookIT Oy v. Bank of Am. Corp.*, 817 F. App'x 990, 995 (Fed. Cir. 2020) (affirming the district court's decision to strike an expert

---

[7]Plaintiff served its initial infringement contentions (ECF No. 189-12 at 7 (reflecting a service date of September 27, 2018)) before the Court issued its Claim Construction Order (ECF No. 137 (filed May 8, 2020)). In addition, and somewhat seperately, Mr. de la Inglesia's argument that Defendants' portal pages are public network locations conflicts to some degree with the argument Plaintiff offered in the Panasonic IPR—upon which the Court found disclaimer—where Plaintiff argued the redirection server redirected from one internet site to another internet site. (*Id.* at 7.)

[8]The Court infers that its construction of "redirection server" rendered Plaintiff's infringement theory disclosed in its initial infringement contentions untenable, so Plaintiff is attempting to pivot to a new theory. However, as the Court noted in its Prior Order, if that is what Plaintiff is trying to do, it did not timely move to amend its infringement contentions. (ECF No. 203 at 4 n.4.)

[9]As discussed above, whether Defendants' invalidity contentions comply with LPR 1-8 is simply irrelevant to whether Plaintiff's infringement contentions comply with LPR 1-6. (ECF No. 216-2 (sealed) at 11-12 (making this unpersuasive argument).)

7

report that asserted the same theories advanced in amended infringement contentions the district court struck as untimely, where the district court found "that the 'reservation engine' argument was considerably different from [the plaintiff's] original contentions and thus impermissible under the court's order striking the amended contentions."); *LookSmart Grp., Inc. v. Microsoft Corp.*, Case No. 17-CV-04709-JST, 2019 WL 7753444, at *2 (N.D. Cal. Oct. 17, 2019) ("In the context of patent infringement cases involving software, an expert cannot theorize that certain functions satisfy a claim limitation unless those functions were previously identified in the party's infringement contentions.") (citation omitted).

In addition, the caselaw Plaintiff relies on to support its argument that Mr. de la Inglesia's public network discussion permissibly flows from Plaintiff's initial infringement contentions is distinguishable. First, Plaintiff's quotation from *Bombardier Recreational Prod., Inc. v. Arctic Cat, Inc.*, Case No. 12-CV-2706 (ADM/LIB), 2016 WL 8291968, at *9 (D. Minn. Apr. 19, 2016) (ECF No. 216-2 at 15) itself includes the important caveat "[i]f a theory was previously disclosed." As discussed, Plaintiff did not previously disclose Mr. de la Inglesia's theory that Defendants' portals are public network locations in any infringement contentions not already stricken. (*Compare* ECF No. 189-12 *with* ECF No. 207 (sealed).) Moreover, the presiding district judge rejected part of the magistrate judge's report and recommendation in *Bombardier*, 2016 WL 8291968, and struck a portion of an expert report that offered a theory not disclosed in the pertinent party's prior disclosures. *See Bombardier Recreational Prod. Inc. v. Arctic Cat Inc.*, Case No. CV 12-2706 (JRT/LIB), 2017 WL 690186, at *2 (D. Minn. Feb. 21, 2017). The *Bombardier* decision therefore tends to support Defendants' position here, not Plaintiff's. Second, in *Apple Inc. v. Samsung Elecs. Co.*, Case No. 5:12-CV-0630-LHK-PSG, 2014 WL 12917334 (N.D. Cal. Jan. 9, 2014) (ECF No. 216-2 at 15-16), the presiding magistrate judge declined to strike certain portions of a challenged expert report because he found the challenged sections were merely refinements of theories already offered in the applicable party's disclosures. *See Apple*, 2014 WL 12917334. That is not the case here. Again, Mr. de la Inglesia's new

theory that Defendants' portals are public network locations was not disclosed in Plaintiff's operative infringement contentions. (*Compare* ECF No. 189-12 *with* ECF No. 207 (sealed).)

The Court will therefore strike the portions of Mr. de la Inglesia's expert report that offer opinions regarding public networks and the redirection server claim limitation.

However, Plaintiff argues that the Court should not strike Mr. de la Inglesia's entire report because some parts of it do not discuss public networks, the redirection server limitation, or the doctrine of equivalents (*see supra* Section III.A.1). (ECF No. 116-2 (sealed) at 20-22.) Plaintiff specifically argues that Mr. de la Inglesia should be allowed to continue to offer his opinions reflected in paragraphs 51-63, 64-68, 71-76, 220-223, 398-400, and 576-578 of his report.[10] (*Id.* at 21.) The Court agrees with Plaintiff on this narrow point.[11] The Court's analysis in this order also does not apply to the background Mr. de la Inglesia offers at the beginning of his report. (ECF No. 207 (sealed) at 1-27.) Mr. de la Inglesia may continue to offer his opinions reflected in paragraphs 1-26, 51-63, 64-68, 220-223, 398-400, and 576-578 of his report. (ECF No. 207 (sealed) at 1-27, 35-40, 110-11, 181, 239.) The rest of his report is stricken.

In sum, the Court will grant Defendants' Motion. Mr. de la Inglesia's expert report (ECF No. 207 (sealed)) is stricken as specified in this Section.

### B. Plaintiff's Motion

Plaintiff first seeks to strike Mr. Tittel's supplemental report in its entirety as untimely, and  then further seeks to strike portions of Mr. Tittel's initial invalidity report as insufficiently disclosed in Defendants' operative invalidity contentions. (ECF No. 212 at 8-13.) The Court addresses and rejects each portion of Plaintiff's Motion, in turn, below.

///

---

[10]Some of these paragraphs relate to Defendants that have since settled.

[11]Plaintiff also argues it will be prejudiced if the Court grants Defendants' Motion, and that is no doubt true, but Plaintiff does not proffer any caselaw applying the Patent Local Rules to suggest that its prejudice is a relevant consideration. (ECF No. 216-2 at 22-24.) In any event, the prejudice is of Plaintiff's own making. (ECF No. 203.)

### 1. Supplemental Report

Plaintiff argues Mr. Tittel's supplemental report should be stricken as untimely under the scheduling order in effect in this case and the combination of Fed. R. Civ. P. 26(e)(2) and Fed. R. Civ. P. 26(a)(3). (ECF No. 212 at 8.) Defendants counter that Mr. Tittel's supplemental report is permissible under both the Federal Rules and the Court's scheduling order. (ECF No. 214 at 2-4.) The Court agrees with Defendants.

The operative scheduling order provides that opening expert reports are due January 7, 2021, rebuttal reports are due February 1, 2021, and that the expert discovery cutoff is March 5, 2021.[12] (ECF No. 187 at 2.) The scheduling order does not specify a deadline for supplemental expert reports. (*Id.*) Defendants served Mr. Tittel's initial expert report on January 7, and his supplemental expert report on January 15, 2021. (ECF Nos. 212-4 at 35, 212-5 at 3.) This does not violate the scheduling order. Moreover, to the extent Plaintiff is prejudiced by the supplemental report, that prejudice is not significant, because Plaintiff still had two weeks to prepare its rebuttal report after Defendants' served Mr. Tittel's supplemental report.

Further, Mr. Tittel's supplemental report is not untimely under Fed. R. Civ. P. 26(e)(2) and Fed. R. Civ. P. 26(a)(3). Fed. R. Civ. P. 26(e)(2) provides that experts have a duty to supplement their reports, but must do so "by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(a)(3), in turn, provides that pretrial disclosures must generally be made at least 30 days before trial. *See* Fed. R. Civ. P. 26(a)(3)(B). The Court has not yet set a trial date in this case. Mr. Tittel's supplemental report is therefore timely under Fed. R. Civ. P. 26(a)(3)(B). *See also Finjan, Inc. v. Symantec Corp.*, Case No. 14-CV-02998-HSG(JSC), 2018 WL 620156, at *3 (N.D. Cal. Jan. 30, 2018) ("As pretrial disclosures are generally due 30 days before trial, *see* Rule 26(e)(3), trial is in July 2018, and [the plaintiff] has not identified some other date that the

---

[12]Rebuttal expert reports are now due two weeks after the Court issues this order, per the parties' stipulation, and other deadlines have similarly been moved back and keyed to this order. (ECF No. 228 at 2.)

Rule 26(b)(3) disclosures are due, the supplementation is not untimely[.]") (citation omitted). In addition, while the parties dispute why Mr. Tittel was not able to view certain discovery materials until January 7 or after (ECF Nos. 212 at 9-10, 214 at 3-4), there is no dispute that the only reason for his delay was a disagreement between the parties as to whether the protective order permitted him to view certain documents (*id.*). A minor delay created by poor communication between the parties does not suggest the sort of "sandbagging or other improper conduct" that could constitute good cause for the Court to strike Mr. Tittel's timely supplemental report. *See Silvagni v. Wal-Mart Stores, Inc.*, Case No. 2:16-cv-00039-JCM-NJK, 2017 WL 4891521, at *2 (D. Nev. Oct. 30, 2017) (citation omitted). Plaintiff's Motion is denied to the extent it asks the Court to strike Mr. Tittel's supplemental report.

### 2.     Portions of Initial Invalidity Report

Plaintiff asks the Court to strike paragraphs 80 and 82-95 of Mr. Tittel's initial invalidity report because his written description and enablement opinions expressed in those paragraphs exceed the scope of the written description and enablement contentions Defendants disclosed in their operative invalidity contentions. (ECF No. 212 at 10-13.) Defendants counter that Mr. Tittel's challenged opinions do not exceed the scope of the theories Defendants disclosed in their invalidity contentions. (ECF No. 214 at 5-11.) The Court again agrees with Defendants.

As Defendants explain in response to Plaintiff's Motion (*Id.* at 4-8), Mr. Tittel opines in his report on the same theories of invalidity for lack of enablement and failure to satisfy the written description requirement that Defendants set forth in their invalidity contentions. (*Compare* ECF No. 212-3 at 29-52 *with* ECF No. 212-4 at 27-33.) All of Defendants' written description and enablement invalidity contentions focus on the 'automatic rule set' that can be changed as a function of the location the user visits, (*see id.*), which Mr. Tittel makes the centerpiece of his written description and enablement invalidity opinions (ECF No. 212-4 at 28 (¶ 82)). The rest of the opinions he offers explain why he thinks these terms present in all asserted claims are insufficiently described and not enabled in the rest

11

of the patent. (ECF No. 212-4 at 27-33.) Thus, the Court is simply unpersuaded by Plaintiff's argument that Mr. Tittel's opinions exceed the scope of Defendants' written description and enablement invalidity contentions.

Further, Plaintiff's argument it was somehow unaware Defendants would argue the entire '459 Patent is invalid based on the enablement and written description contentions in Defendants' invalidity contentions is even more unpersuasive. (ECF No. 212 at 10, 12.) If a claim limitation found in each asserted claim is invalid, then each asserted claim is invalid. *See, e.g.*, *Permutit Co. v. Graver Corp.*, 284 U.S. 52, 57-58 (1931) (invalidating entire patent where the patentee failed "to give in the specification 'a written description' and has likewise failed particularly to point out and distinctly claim" a particular limitation). Plaintiff's expressed surprise at Mr. Tittel's opinion that Plaintiff's entire asserted patent is invalid for lack for enablement or an insufficient written description is thus unpersuasive because it reflects at least a disregard of longstanding, well-established patent law.

In sum, Plaintiff's Motion is denied.

**C.     Motions to Seal**

Both parties seek to seal portions of the materials they submitted in connection with Defendants' Motion. (ECF Nos. 205, 216.) Both motions are unopposed (ECF Nos. 205 at 3, 216 at 3), and indeed, both sides submitted declarations from their counsel in support of the other side's motion to seal (ECF Nos. 210, 218, 220). The parties seek to seal portions of their briefs and exhibits containing information that has been designated confidential under the parties' protective order, and which would reveal confidential information about the operation of Defendants' computer systems that allow their guests to connect to the internet, which could cause competitive harm to Defendants if unsealed. (ECF Nos. 205 at 2-3, 205-2 at 2, 210 at 2, 220 at 2-4.)

In the Ninth Circuit there is "a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003) (citation omitted). To overcome this presumption, a party must articulate "compelling

reasons"[13] justifying nondisclosure, such as use of the record to gratify spite, permit public scandal, circulate libelous statements, or release trade secrets. *See Kamakana v. City of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006); *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (providing an example of material properly sealed "as sources of business information that might harm a litigant's competitive standing") (citation omitted). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana*, 447 F.3d at 1179 (citation omitted).

The parties have articulated compelling reasons convincing the Court to grant their motions to seal. Specifically, they state—supported by sworn declarations from their counsel—that denial of their motions to seal could cause competitive harm because it would allow Defendants' competitors to learn confidential details about the operation of their computer networks. (ECF Nos. 205 at 2-3, 205-2 at 2, 210 at 2, 220 at 2-4.) This is a type of information properly filed under seal. *See Nixon*, 435 U.S. at 598 (providing an example of material properly sealed "as sources of business information that might harm a litigant's competitive standing"). The Court accordingly grants the motions to seal.

**IV.   CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendants' motion to strike the infringement report of Plaintiff's expert witness, Mr. Erik de la Iglesia (ECF No. 204), is granted as specified herein.

It is further ordered that Defendants' motion to seal (ECF No. 205) is granted.

---

[13]While there are two different standards, the Court applies the "compelling reasons" standard here because Defendants' Motion is "more than tangentially related to the underlying cause of action." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1099 (9th Cir. 2016).

It is further ordered that Plaintiff's motion to strike portions of Defendants' expert Ed Tittel's expert reports (ECF No. 212) is denied.

It is further ordered that Plaintiff's motion to seal (ECF No. 216) is granted.

DATED THIS 25th Day of March 2021.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE